IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KRYSTLE RAGIN,                *

                              *

          Plaintiff,        *

                              *     Civ. No. MJM-24-3365

    v.                      *

                              *

PETE HEGSETH, Secretary,     *

Department of Defense, et al.,    *

                              *

          Defendants.    *

                              *

* * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Krystle Ragin filed this civil action against the Secretary of Defense and the Director of the National Security Agency ("NSA") (collectively, "Defendants") for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") while Plaintiff was employed at the National Security Agency. This matter is before the Court on Defendants' motion to dismiss or, in the alternative, for summary judgment. The motion is fully briefed, and no hearing is necessary to resolve it. Loc. R. 105.6 (D. Md. 2025). For reasons stated below, the motion shall be granted, and the Amended Complaint shall be dismissed without prejudice.

## I.    FACTUAL BACKGROUND[1]

Plaintiff Krystle Ragin ("Plaintiff" or "Ragin") worked for the NSA as a director/corporate officer from on or about August 2, 2021, to March 13, 2023. ECF 6 ("Am. Compl."), ¶¶ 5, 8, 32. The NSA is a national intelligence agency within the United States Department of Defense[2] and is headquartered in Fort Meade, Maryland. *Id.* ¶ 6.

---

[1] The following facts are drawn from Plaintiff's Amended Complaint. *See* ECF 6.

[2] Since the events of this case, the U.S. Department of Defense has been renamed the U.S. Department of War.

1

During her time at the NSA, Ragin worked under the supervision of Sean G. *Id.* ¶ 8. While employed, Ragin received "positive performance evaluations and feedback." *Id.* ¶ 9. Sometime in 2022, Sean G. assigned Ragin, an African American woman, to sit with the other black, non-supervisory women in a cubicle "segregated from everyone else." *Id.* ¶¶ 7, 15. Sean G. routinely "ignored" this cubicle, though he socialized with white employees in other cubicles. *Id.* ¶ 16. Sean G. began acknowledging the women in Plaintiff's cubicle after she complained to Division Chief Michael S. about his behavior. *Id.* Also in 2022, one of Ragin's white coworkers, Stephanie D., made race-related comments directed at Ragin, including asking if "her hair was real"; noting, while smiling and raising her eyebrows, that a man who commented that she looked nice "was Black too"; and, in June, commenting that Ragin did not seem like the "type" to like horses. *Id.* ¶¶ 12–14. Around this time, Stephanie D. also told Ragin that she was good at making people "pay" if they weren't nice to her. *Id.* ¶ 14.

In June 2022, following these interactions with Stephanie D. and Sean G., Ragin filed a report with her Deputy Section Chief Norina D., alleging Sean G. had engaged in racial discrimination directed towards her, and documenting Stephanie D.'s racial comments and discriminatory behavior. *Id.* ¶ 17. Norina G. told Ragin that these concerns would be addressed. *Id.* Around that same time, Ragin reported Stephanie D.'s behavior directly to Sean G., to which Sean G. responded to the effect of "I know how Stephanie is." *Id.* ¶ 18.

The following month, around late July of 2022, Ragin made an anonymous complaint to the Anti-Harassment Office, again documenting both Stephanie D. and Sean G.'s behavior towards her. *Id.* ¶ 19.[3] Sean G. and Norina D. interviewed Stephanie D. about Ragin's allegations on July

---

[3] Even though this was an anonymous complaint, Sean G. and Norina D. were aware that Ragin had filed the complaint. *Id.* ¶ 20.

21, 2022. *Id.* ¶ 20. On July 25, 2022, the NSA issued Stephanie D. a memo regarding her conduct in the workplace, stemming from the allegations in Ragin's complaint. *Id.* ¶ 23. Earlier that month, on July 18, 2022, Stephanie D. messaged another white coworker stating, "bi[***] [Ragin] is gonna get her day," "and I hope it's not going to be a slap on the wrist." *Id.* ¶ 26.

After Stephanie D. was interviewed by Sean G. and Norina D. on July 21, 2022, she reported to them that Ragin "had 'discrepancies' with attendance." *Id.* ¶ 21. Sean G. reported this allegation to the Office of the Inspector General ("OIG") on July 22, 2022, one day after interviewing Stephanie D. about Ragin's allegations. *Id.* ¶ 22.

On September 6, 2022, the NSA notified Ragin that OIG was investigating her for time and attendance. *Id.* ¶ 27. At the time, Ragin had no awareness of the NSA investigating "any other employees for time and attendance."[4] *Id.* ¶ 28.

On September 12, 2022, Ragin started with another division within NSA, which required her to work part of the time at her detail location and part of the week at her regular workstation. *Id.* ¶ 28. Sean G. required Ragin to inform him of her location at all times of the week. *Id.* On or about September 15, Sean G. began requiring that Ragin send him emails every time she came in and out of the office—a requirement Ragin did not know Sean G. to make of any other employees. *Id.* Around this time, Ragin learned that the black co-workers with whom she shared a cubicle were "not trained on office protocols," though all the white women in the cubicle next to her were all properly trained. *Id.* ¶ 30. In October 2022, Ragin made a complaint to Division Chief Michael S. about Sean G.'s "management style and favoritism related to her race." *Id.* ¶ 31.

---

[4] To the contrary, white NSA employees were often away from their desks or took long breaks, but Sean G. did not initiate an investigation into their time and attendance. *Id.* ¶ 28. One former co-worker of Plaintiff, Jake F., a white man, "frequently disappeared during work hours, and failed to follow attendance policies." *Id.* Despite complaints about Jake's behavior, Sean G. assigned him favorable shifts, did not report his time and attendance to OIG, and did not terminate him. *See id.*

Several months later, on or about February 27, 2023, the NSA issued Ragin a notice of termination "due to her alleged inaccurate time and attendance records" and suspended her security clearance. *Id.* ¶ 32. Upon receiving this notice, Plaintiff opted to "resign in lieu of termination" and did so on March 13, 2023. *Id.* ¶ 32.

## II.    PROCEDURAL HISTORY

Plaintiff made contact with an Equal Employment Opportunity ("EEO") counselor on April 7, 2023; submitted an informal complaint of race-based discrimination, hostile work environment, and reprisal on April 13, 2023; and filed a formal complaint seeking reinstatement and damages on May 15, 2023. ECF 29-2 (Def. Ex. 1) at 73–77; ECF 29-4 (Def. Ex. 2) at 1–2, 44. Following an investigation and issuance of a report of investigation, the agency issued a Final Agency Decision on August 26, 2024, finding that Plaintiff did not prevail in her claims. *Id.* at 2, 56.

On November 21, 2024, Plaintiff filed the instant civil action, and she later filed an Amended Complaint, naming the then-Secretary of Defense Lloyd J. Austin, III and the then-Director of the NSA Gen Timothy D. Haugh as Defendants.[5] The Amended Complaint asserts claims under Title VII in three counts: race discrimination (Count I), hostile work environment (Count II), and retaliation (Count III). ECF 6. Defendants filed a motion to dismiss or, in the alternative, for summary judgment, attaching extensive exhibits comprising the administrative record. ECF 29. Plaintiff filed a response in opposition to the motion, ECF 32, and Defendants filed a reply in support, ECF 34. Plaintiff subsequently filed a praecipe to correct factual misstatements made inadvertently in her opposition. ECF 35.

---

[5] Pursuant to Federal Rule of Civil Procedure 25(d), upon the departure of a public officer, their successor is automatically substituted as the properly named party. Accordingly, the Clerk will be directed to replace the original Defendants' names with current Secretary of War Pete Hegseth and Acting NSA Director Gen Joshua Rudd on the court docket for this case.

### III.   STANDARD OF REVIEW

A motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. "To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in [Rule] 8(a)(2), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 596 (D. Md. 2014) (citation omitted).

In ruling on such a motion, the court accepts all factual allegations in the complaint as true but does not defer to legal conclusions drawn from those facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). A complaint must allege "a plausible claim for relief, *id.* at 679, which means it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Generally, when a 12(b)(6) motion is filed, the court's review is limited to the allegations in the complaint and documents that are incorporated into the complaint by reference and those properly attached to the complaint as exhibits. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). "Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment." *Yampierre v. Baltimore Police Dep't*, Civ. No. ELH-21-1209, 2023 WL 6049489, at *23 (D. Md. Sept. 15, 2023) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791

F.3d 500, 508 (4th Cir. 2015)). A court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). For a document to be integral, a "plaintiff's claims must turn on, or otherwise be based on, the contents of the document." *Brentzel v. Fairfax Transfer and Storage, Inc.*, No. 21-1025, 2021 WL 6138286, at *2 (4th. Cir. Dec. 29, 2021) (per curiam) (citing *Goines*, 822 F.3d at 166).

Additionally, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "[I]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 416 (D. Md. 2024) (quoting *Campbell v. Mayorkas*, MOC-20-697, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)); *see also Smith-Henry v. Kendall*, Civ. No. GLS-23-2154, 2024 WL 4264905, at *6 (D. Md. Sept. 23, 2024) (citing *Yampierre*, 2023 WL 6049489, at *24; *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018))..

Defendants move to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) but, alternatively, seek summary judgment under Federal Rule of Civil Procedure 56. "When a movant characterizes a motion as a motion to dismiss or alternatively as a summary judgment motion, it implicates the Court' discretion under Rule 12(d)." *Smith-Henry*, 2024 WL 4264905, at *6 (D. Md. Sept. 23, 2024) (citing *Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011)). Under Federal Rule of Civil Procedure Rule 56, a court shall grant a party's summary judgment motion "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To avoid summary judgment, the non-moving party must show that there is a genuine dispute of material fact so as to preclude judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009).

Generally, summary judgment is disfavored "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011). At the same time, the party opposing summary judgment "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). A party adequately raises its need for discovery by "filing an affidavit or declaration pursuant to Rule 56(d), explaining why . . . the party cannot present facts essential to justify its opposition without needed discovery." *Smith-Henry*, 2024 WL 4264905, at *6 (quoting *Yampiere*, 2023 WL 6049489, at * 19) (cleaned up).

Here, Plaintiff filed a Rule 56(d) affidavit, *see* ECF 32-5, and argued that summary disposition is "disfavored where, like here, Plaintiff's ability to prove pretext is heavily dependent upon witness testimony, credibility issues, and other evidence requiring discovery." ECF 32-1 (Pl. Opp'n) at 30. Defendant argues that the discovery Plaintiff seeks is "irrelevant" and "cannot cure her failure to exhaust administrative remedies." ECF 34 (Def. Reply) at 5. Notably, in her opposition to Defendant's motion, Plaintiff does not dispute the accuracy of the administrative records submitted with the parties' motion papers and, indeed, cites the administrative record

extensively and attaches them as her own exhibits. *See* ECF 33-2 (Supplement to Response in Opposition).

In consideration of the foregoing, the Court resolves to decide Defendants' motion under a Rule 12(b)(6) standard but may consider adjudicative facts reflected in the administrative records submitted by the parties without converting the motion to one for summary judgment.

## IV.    ANALYSIS

### A. Exhaustion of Administrative Remedies

In their motion to dismiss, Defendants argue, first, that claims asserted in the Amended Complaint are procedurally barred for Plaintiff's failure to exhaust her administrative remedies. *See* ECF 29-1 (Def. Mem.) at 10–16. Defendants argue that Plaintiff first made initial contact with the EEO office on April 7, 2023. *Id.* at 13. Accordingly, "[a]ny aspect of Counts I and III that is based on acts occurring prior to February 21, 2023 are time barred." *Id.* Defendants also contend that the Amended Complaint contains allegations that were never presented to the agency for investigation, and, in any event, many of the "allegations of discrimination and reprisal that took place between 6 months to almost a year *before* her first EEO contact in April 2023." *Id.* at 11, 13 (emphasis in original). In response, Plaintiff argues that all the allegations in the Amended Complaint were either in her EEO complaint or "reasonably related to or expected to grow out of the administrative charge." Pl. Opp'n at 26.

Before a federal employee can file suit under Title VII, she must first pursue and exhaust administrative remedies. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, it advances the "twin objectives" of "protecting agency authority in the administrative process and

promoting efficiency in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (internal quotation marks, alterations, and citation omitted). It "'ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible.'" *Yampiere*, 2023 WL 6049489, at * 27 (quoting *Cowgill v. First Data Technologies, Inc.*, 41 F.4th 370, 384 (4th Cir. 2022)).

"Among other things, federal employees 'must initiate contact with a Counselor within 45 days of the matter alleged to be discriminatory.'" *Smith v. Vilsack*, 832 F. Supp. 2d 573, 581 (D. Md. 2011) (citing 29 C.F.R. § 1614.105(a)(1)). If a plaintiff fails to seek EEO counseling about a discrete act of discrimination within the prescribed period, a federal court must dismiss any employment discrimination claim based on that discrete act. *See Battle v. Burwell*, Civ. No. PWG-14-2250, 2016 WL 4993294, at *4 (D. Md. Sept. 19, 2016) (citations omitted); *Upshaw v. Tenenbaum*, Civ. No. PWG-12-3130, 2013 WL 3967942, at *5 (D. Md. July 31, 2013) (quoting *Blount v. Dep't of Health & Hum. Servs.*, 400 F. Supp. 2d 838, 841 (D. Md. 2004), *aff'd sub nom. Blount v. Thompson*, 122 F. App'x 64 (4th Cir. 2005)) ("A prospective plaintiff's failure to contact an EEO Counselor within the 45 days prescribed 'is tantamount to failure to timely exhaust all administrative remedies' and 'ordinarily results in dismissal of a complaint of discrimination.'"). "Any *discrete* acts of discrimination that occurred prior to the applicable limitations period are procedurally barred and cannot be used as a basis for recovery." *Gilliam v. S.C. Dept. of Juvenile Justice*, 474 F.3d 134, 139 (4th Cir. 2007) (emphasis added).  In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), the Supreme Court identified actions that qualify as discrete, such as "termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." The Court explained that "[e]ach incident of discrimination

and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.*

An administrative charge of discrimination "defines the scope of the plaintiff's right to institute a civil suit," but it "does not strictly limit a Title VII suit which may follow[.]"*Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005) (quoting *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)). "[R]ather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Bryant*, 288 F.3d at 132 (quoting *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir.1981)) (cleaned up). "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000)) (citing *Chisholm*, 665 F.2d at 491).

Here, Plaintiff made initial contact with an EEO counselor on April 7, 2023. *See* Def. Ex. 2.[6] Subtracting 45 days brings us to February 21, 2023. Thus, any claims based on discrete acts of discrimination alleged to have occurred before February 21, 2023, are procedurally barred. The Amended Complaint alleges two events that occurred during the applicable 45-day timeframe. First, on or about February 27, 2023, the NSA suspended Plaintiff's security clearance and issued Plaintiff a notice of termination "due to her alleged inaccurate time and attendance records" and suspended her security clearance. Am. Compl. ¶ 32. Second, after receiving this notice, Plaintiff opted to "resign in lieu of termination" and did so on March 13, 2023. *Id.* Plaintiff alleges that "[t]he reasons for terminating Ragin's employment are false and are pretext for unlawful

---

[6] Again, Plaintiff does not dispute accuracy of this document.

discrimination." *See id.* ¶¶ 38, 49. Therefore, the core allegation of the Amended Complaint—that Plaintiff was unlawfully discharged under Title VII—occurred within the required 45-day reporting period.

Defendants, however, seem to suggest that the Court should ignore *any* alleged fact that occurred prior to February 21, 2023. *See* Def. Mem. at 13–16 (noting that many of Stephanie D.'s alleged comments and Sean G.'s alleged actions took place in 2022 and arguing that "*[a]ny aspect* of Counts I and III that is based on acts occurring prior to February 21, 2023 are time barred" (emphasis added)). But the procedural time bar applies to "discrete acts of discrimination," *Gilliam*, 474 F.3d at 139, not all acts or events asserted in support of a Title VII claim. A termination of employment or a constructive discharge is a discrete act that may form the basis of a Title VII discrimination or retaliation claim.  *See Morgan*, 536 U.S. at 114; *Young v. Nat'l Ctr. for Health Servs. Rsch.*, 828 F.2d 235, 237–38 (4th Cir. 1987). Here, Plaintiff timely contacted an EEO counselor within the 45-day reporting period after her discharge. To the extent Plaintiff contends that any actions that occurred before February 21, 2023, were discrete discriminatory employment actions, any Title VII claims founded upon those actions are procedurally barred. But Plaintiff may rely on facts that occurred before February 21, 2023, to support her timely Title VII discrimination and retaliation claims based on her termination or constructive discharge.

Additionally, "[h]ostile environment claims are different in kind from discrete acts[]" because "[t]heir very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. Accordingly, "the continuing violation doctrine applies to a hostile work environment claim." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 (4th Cir. 2019) (citing *Morgan*, 536 U.S. at 116–17, and *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 223 n.5 (4th Cir. 2016)). If "an act contributing to [a hostile work environment] claim occurs within the filing period, the entire time period of the

hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. Thus, Plaintiff may rely on pre-February 21, 2023, facts to support a Title VII hostile work environment claim based on allegations of harassment that continued to occur, or were repeated, within the 45-day reporting period.[7]

### B. Count I: Race Discrimination

In Count I of the Amended Complaint, Plaintiff asserts a claim of race discrimination in violation of Title VII. Defendants argue that Plaintiff's Amended Complaint fails to plead a prima facie claim for race discrimination because it does not allege that NSA took an adverse employment action against Plaintiff or that she was treated differently from similarly situated employees of other races. Def. Mem. at 18. Even if this Court found that Plaintiff stated a prima facie discrimination claim, Defendants argue that NSA articulated a legitimate, non-discriminatory rationale for seeking to terminate Plaintiff. Specifically, Defendants argue, "[t]he record before the Court is clear that Plaintiff was proposed for termination and subsequently placed on administrative leave before she resigned because she submitted false and inaccurate timesheets, for a total shortfall to the government of 478 hours." *Id.* at 22. In response, Plaintiff contends that she suffered multiple adverse employment actions, including being subject to "heightened supervisory scrutiny that restricted her professional autonomy," a referral to OIG for alleged time

---

[7] Plaintiff notes in her praecipe that the administrative record reflects a contact she made with a EEO counselor in September 2022. *See* ECF 35 at 1. She does not explain or argue the significance of this contact. No formal complaint or investigation is alleged to have followed this contact. "A plaintiff only exhausts his administrative remedies as to 'those discrimination claims stated in the [EEOC] initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint.'" *Mallik v. Sebelius*, 964 F. Supp. 2d 531, 538 (D. Md. 2013) (quoting *Van Durr v. Geithner*, Civ. No. 12-02137-AW, 2013 WL 4087136, at *4 (D. Md. Aug. 12, 2013) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996))). Here, Plaintiff did not exhaust administrative remedies for any alleged discrete discriminatory act occurring in August or September 2022. Therefore, even if Plaintiff is now pursuing relief based on a discriminatory act that occurred during the August to September 2022 period, that claim for relief would be subject to dismissal. *See Cowgill*, 41 F.4th at 384 ("The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." (quoting *Miles*, 429 F.3d at 491)).

fraud, and a recommendation for termination. Pl. Opp'n at 12. Plaintiff also argues that "she was treated less favorably than a similarly situated white employee, Jake F., who joined the Defendant in a comparable capacity and who frequently disappeared during work hours and failed to follow attendance policies." Pl. Opp'n at 13.

Title VII prohibits an employer from discriminating against an employee based upon the employee's race, color, religion, sex, or national origin, and from retaliating against an individual for engaging in activity protected by Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (anti-discrimination provision); *id.* § 2000e-3(a) (anti-retaliation provision). To establish a prima facie case of discrimination under Title VII, a plaintiff must show: (1) membership in a protected class; (2) an adverse employment action by the employer; (3) satisfactory job performance at the time of the adverse employment action; and (4) that the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015) (quoting *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)). "[A] plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss[.]" *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). But a plaintiff must allege sufficient facts to "'state[ ] a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct'" and "to raise a right to relief above the speculative level[.]" *Id.* (quoting *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. at 555).

"[S]ome adverse employment action is required" to prevail on a claim of discrimination under Title VII. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (citation omitted). Specifically, a plaintiff must show that the defendant employer took some action that "brought about some 'disadvantageous' change in an employment term or condition[.]" In other

words, "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)).

Additionally, the adverse employment action must have "occurred under circumstances that raise a reasonable inference of unlawful discrimination[.]" *Gaines v. Balt. Police Dep't*, Civ. No. ELH-21-1211, 2023 WL 2185779, at *12 (D. Md. Feb. 22, 2023) (quoting *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 650 (4th Cir. 2021)). An inference of unlawful discrimination is supported where "similarly-situated employees outside the protected class receive[] more favorable treatment." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (citation omitted). "'[W]here a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination,' the plaintiff must demonstrate that the comparator is similarly situated in all relevant respects." *Gaines*, 2023 WL 2185779, at *12 (quoting *Swaso*, 698 F. App'x at 748); *see also Asi v. Info. Mgmt. Grp., Inc.*, Civ. No. GLR-18-3161, 2019 WL 4392537, at *6 (D. Md. Sept. 13, 2019) (pleading disparate treatment discrimination claim requires plaintiff to "identify the proposed comparator and establish a plausible basis for believing the employee was actually similarly situated") (cleaned up).

As discussed above, Plaintiff exhausted her administrative remedies only for discrete discriminatory acts that occurred between February 21, 2023, and April 7, 2023. The Amended Complaint alleges only two discrete acts that occurred during that period: (1) on or about February 27, 2023, NSA suspended her security clearance[8] and issued Plaintiff a notice of termination; and (2) on March 13, 2023, Plaintiff resigned in lieu of termination. Therefore, Count I is limited to these two events. *See* Part IV.A, *supra*.

---

[8] Although mentioned in her Amended Complaint, Plaintiff does not argue that losing her security clearance was an adverse employment in her Opposition.

14

Assuming NSA's action on February 27, 2023, is a plausible adverse employment action, the facts alleged in the Amended Complaint do not support a reasonable inference that this action was based on Plaintiff's race. In the absence of direct evidence of race discrimination, Plaintiff relies on a disparate treatment theory based upon NSA's treatment of a former colleague, Jake F., as comparator evidence. But "to establish or allege a valid comparator, the plaintiff must produce evidence or allege that the plaintiff and comparator 'dealt with the same supervisor, were subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Yampierre*, 2023 WL 6049489, at \*34 (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019)). The extent of the allegations in the Amended Complaint regarding Jake F. is as follows:

> For example, Ragin's former co-worker Jake F., a white male working in a similarly situated position as Ragin, frequently disappeared during work hours, and failed to follow attendance policies. Despite complaints about Jake's behavior, Sean G. assigned Jake F. favorable shifts and did not report his time and attendance to the OIG and did not terminate him.

Am. Compl. ¶ 28. Apart from the conclusory and formulaic allegation that Plaintiff and Jake F. had "similarly situated" positions, no facts are offered to suggest that Plaintiff and Jake F. shared the same—or even similar—job responsibilities, that Plaintiff and Jake F. were subject to the same workplace standards, and what policies governed Plaintiff's and Jake F.'s time and attendance. And there is no indication in the Amended Complaint that Sean G. was aware of complaints about Jake F. Simply put, Plaintiff fails to present facts to establish "a plausible basis for believing" that she and Jake F. were similarly situated, *Coleman*, 626 F.3d at 191, which leaves the Amended Complaint devoid of "circumstances that raise a reasonable inference of unlawful discrimination[.]" *Sempowich*, 19 F.4th at 650. Count I therefore fails to state a claim.

### C. Count II: Hostile Work Environment

In Count II of the Amended Complaint, Plaintiff asserts a claim of hostile work environment based on race and protected activity, in violation of Title VII. To state a Title VII claim for hostile work environment based on race, a plaintiff must allege that there was "(1) unwelcome conduct; (2) that is based on the plaintiff's [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (citation and internal quotation marks omitted). To state a Title VII claim for retaliatory hostile work environment, a plaintiff must allege that "the employer's harassment was in retaliation for engaging in protected activity." *Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196, 226 (D. Md. 2025) (citing *Fordyce v. Prince George's Cnty. Maryland*, 43 F. Supp. 3d 537, 552 (D. Md. 2014), and *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 600 (D. Md. 2011)). Protected activity in this context includes opposing or complaining about employment practices that are unlawful under Title VII, including workplace discrimination, or participating in an investigation of such violations or in a proceeding brought under Title VII. *See* 42 U.S.C. § 2000e-3(a). Thus, to state a plausible claim for retaliatory hostile work environment under Title VII, a plaintiff "must . . . allege that the retaliatory conduct (1) was unwelcome, (2) was sufficiently severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination, and (3) can be attributed to the employer." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022) (citation omitted).

The "severe or pervasive" requirement has both subjective and objective components. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's

16

position.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). A plaintiff "must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Perkins*, 936 F.3d at 208. A court considers "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008)). "The standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Id.* (cleaned up). For purposes of a hostile work environment claim under Title VII's anti-discrimination provision, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). *See also Sunbelt Rentals*, 521 F.3d at 315–16 (internal quotation marks and citations omitted) ("[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII."). And, even for purposes Title VII's anti-retaliation provision, "the ordinary tribulations of the workplace," which "all employees experience," are not "so severe or pervasive" to "dissuade a reasonable worker from making or supporting a charge of discrimination." *Laurent-Workman*, 54 F.4th at 217 (citations and internal quotation marks omitted).

Plaintiff's allegations here do not support her hostile work environment claim. She alleges the following: (a) in May and June 2022, Stephanie D., a white coworker, made comments "related to" Plaintiff's race and comments about Plaintiff's hair and hobbies; (b) sometime in 2022, Sean

17

G. assigned four black employees to sit in the same four-person cubicle and did not greet the employees in the morning until after Plaintiff complained to the Division Chief;[9] (c) in September 2022, Plaintiff received notice that she was referred to OIG based on time discrepancies and also "learned that her African American cubicle-mates "were not trained on office protocols, whereas the white women in the cubicle next to hers were all properly trained"; (d) also in September 2022, when Plaintiff worked part of her time at a detail location, Sean G. required Plaintiff to report her location "at all times of the week" and "to send an email" when coming and going to and from the office; (e) in February 2023, the NSA issued her a notice of termination due to her alleged inaccurate time and attendance records; and (f) in March 2023, she resigned in lieu of termination. Am. Compl. ¶¶ 12–16, 27, 29, 30, 32.

The foregoing alleged incidents were not so objectively hostile, abusive, or frequent, over the 17-month period of Plaintiff's employment, as to alter the conditions of her employment, *see Boyer-Liberto*, 786 F.3d at 277, or to "dissuade a reasonable worker from making or supporting a charge of discrimination[,]" *Laurent-Workman*, 54 F.4th at 217. The incidents consist largely of "ordinary tribulations of the workplace," *id.*, and "isolated instances of interpersonal conflict, rude treatment, and offhand comments that are not actionable under Title VII[,]" *Jordan v. Lonza Walkersville, Inc.*, Civ. No. MJM-24-1128, 2025 WL 975050, at *6 (D. Md. Mar. 31, 2025). Plaintiff's hostile work environment claims may be dismissed for these reasons alone.

Additionally, however, Plaintiff's hostile work environment claims fail to the extent they rely upon the unwelcome conduct of Stephanie D. because the Amended Complaint does not include any facts to support attributing this conduct to NSA. A hostile work environment is

---

[9] *But see* Def. Reply at 10–11 (explaining the interpersonal tensions that led to employees voluntarily choosing the seating arrangement that Plaintiff alleges to be management discrimination).

imputable to an employer under Title VII if it is created by a supervisor with authority over the employee, *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher*, 524 U.S. at 807; or if the employer "knew or should have known" about coworker harassment and "failed to take effective action to stop it[,]" *Sunbelt Rentals*, 521 F.3d at 319 (citation omitted). Once an employer has notice of discriminatory harassment, it is required to take "prompt remedial action reasonably calculated to end the harassment." *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir. 1995) (quoting *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir. 1983)).

Here, the Amended Complaint appears to concede that NSA took "prompt remedial action reasonably calculated to end" any race-based harassment Plaintiff suffered from Stephanie D.'s unwelcome race-related comments to Plaintiff occurring in May and June 2022. Am. Compl. ¶¶ 12–14. Plaintiff reported concerns about these comments to Sean G. and Norina D. in June 2022 and submitted an anonymous harassment complaint in late July 2022. *Id.* ¶¶ 17–19. Norina D. told Plaintiff that "she would address these concerns with Stephanie D.[,]" *id.* ¶ 17, and Norina D. and Sean G. then interviewed Stephanie D. about these concerns, *id.* ¶ 20. Plaintiff does not allege that Stephanie D. continued to make unwelcome race-related comments to Plaintiff after Norina D. and Sean G. interviewed her.[10]

Plaintiff also fails to state a plausible constructive discharge claim.[11] A Title VII claim based upon a constructive discharge "contemplates a situation in which an employer discriminates

---

[10] The only additional act Stephanie D. is alleged to have taken was reporting to Norina D. and Sean G. in July 2022 that Plaintiff had "discrepancies with attendance." *Id.* ¶ 21. Even accepting this act by Stephanie D. was motivated by retaliation, *see* Am. Compl. ¶ 14, and eventually led to the subsequent OIG investigation of Plaintiff's time and attendance, *see id.* ¶¶ 22, 27, the Amended Complaint asserts no basis for attributing Stephanie D.'s retaliatory motive to NSA. Moreover, as explained *supra*, Stephanie D.'s report regarding Plaintiff's attendance, even when viewed in combination with her earlier race-related comments, does not amount to "severe or pervasive" conduct necessary to support a hostile work environment claim.

[11] I note, first, that Plaintiff does not expressly allege constructive discharge in the Amended Complaint. She does, however, argue in her opposition that the OIG investigation of her time and attendance

against an employee to the point such that h[er] 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004)). A constructive discharge claim requires "'something more' than the showing required for a hostile work environment claim." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Suders*, 542 U.S. at 147). "To establish a constructive discharge claim, a plaintiff must show 'that [s]he was discriminated against by h[er] employer to the point where a reasonable person in h[er] position would have felt compelled to resign' and that she actually resigned." *Id.* (quoting *Green*, 578 U.S. 547, 555) (alterations in *Evans*). The work conditions must go "beyond 'ordinary' discrimination." *Evans*, 936 F.3d at 193 (quoting *Suders*, 542 U.S. at 147).

> The Fourth Circuit has explained that the high bar of intolerability
>
>> is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign. Instead, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt *compelled to resign*, . . . that is, whether [s]he would have had *no choice but to resign*.

*Perkins*, 936 F.3d at 212 (internal quotation marks and citations omitted, emphasis added). "[D]ifficult or unpleasant working conditions ..., without more, are not so intolerable as to compel a reasonable person to resign." *Id.* Further, "[t]he 'frequency of the conditions at issue' is an important part of the intolerability assessment." *EEOC v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 753 (D. Md. 2021) (quoting *Evans*, 936 F.3d at 193). "The more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is

---

"culminated in her constructive discharge[,]" Pl. Opp'n at 1, 8, and she later connects that contention to her Title VII claims, *see id.* at 23–25.

isolated or infrequent, it is less likely to establish the requisite intolerability." *Evans*, 936 F.3d at 193.

Here, as explained *supra*, Plaintiff's allegations of mistreatment while employed by NSA are insufficient to state a plausible claim for hostile work environment. It follows that the same conduct cannot be so objectively intolerable to support a plausible constructive discharge claim. *See Evans*, 936 F.3d at 193 (quoting *Suders*, 542 U.S. at 147) (requiring plaintiff alleging constructive discharge to "show 'something more' than the showing required for a hostile work environment claim"). The incidents alleged were not so frequent or severe to rise to the level of objective intolerability or to compel a reasonable employee to resign. Indeed, Plaintiff did not resign until after NSA issued her a notice of termination, several months after she became aware of the OIG investigation into her alleged inaccurate time and attendance and several months after any other conduct she casts as unwelcome or harassing.

For all of the foregoing reasons, Count II of the Amended Complaint must be dismissed.

### D. Count III: Retaliation

In Count III of the Amended Complaint, Plaintiff asserts a claim of retaliation under Title VII. As explained in Part IV.B, *supra*, Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]" or because the employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To state a *prima facie* claim for retaliation, a plaintiff must allege "(1) that she engaged in a protected activity, (2) that her employer took an adverse action against her, and (3) that there was a causal link between the two events." *Laurent-Workman*, 54 F.4th at 212 (citation omitted).

Plaintiff argues that she engaged in protected activity when: (1) in June 2022, she complained to Norina D. about remarks made by Stephanie D; and (2) on or about July 15, 2022, she submitted an internal harassment complaint through NSA's Anti-Harassment office. *See* Pl. Opp'n at 19–20. As a result of that activity, and soon thereafter, Plaintiff "experienced a cascade of retaliatory acts," including Sean G. submitting a referral to the OIG for alleged timesheet discrepancies, which led to an investigation and a notice of proposed termination, and new supervisory protocols, such as daily location tracking and individualized monitoring. *Id.* at 21.

Any retaliation claims based on OIG investigation and Sean G.'s tracking of Plaintiff's workplace activities are procedurally barred because the alleged discrete acts of retaliation occurred before February 21, 2023—45 days before Plaintiff contacted an EEO counselor and followed the administrative remedy process. Sean G. contacted the OIG on or about July 22, 2022, Am. Compl. ¶ 22, and NSA notified Plaintiff that the OIG was investigating her for time and attendance on September 6, 2022, *id.* ¶ 27. Beginning the week of September 12, 2022, Sean G. required Plaintiff to inform him of her location at all times of the week. *Id.* ¶ 29. On September 15, 2022, Sean G. asked Plaintiff to send an email every time she came in and out of the office. *Id.* Plaintiff did not contact an EEO counselor within 45 days of any of these allegedly retaliatory acts.

Insofar as Plaintiff's retaliation claim relies upon the notice of termination issued on February 27, 2023, the claim would not be procedurally barred, but it would fail for lack of plausibility. As noted *supra*, a retaliation claim under Title VII requires a "causal link" between the plaintiff's protected activity and the employer's adverse action. *Laurent-Workman*, 54 F.4th at 212. In the instant case, Plaintiff must allege a causal connection between her complaints about Stephanie D.'s race-related comments and NSA's notice of proposed termination. "To establish a causal relationship between the protected activity and the termination, a plaintiff must show that

the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021) (citation omitted). "[C]onstructive knowledge is not sufficient[;] . . . actual knowledge is required." *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 448 (D. Md. 2022) (citing *Roberts*, 998 F.3d at 125). "Thus, where a relevant decisionmaker is unaware of any prior complaints, a plaintiff 'cannot establish the necessary causal connection between [her] filing a complaint . . . and [her] termination.'" *Roberts*, 998 F.3d at 124 (citation omitted).

Here, the Amended Complaint does not contain any facts to support a reasonable inference that the decisionmaker behind the termination notice was aware of Plaintiff's complaints about Stephanie D. at the time they decided to issue the notice. The Amended Complaint alleges that Plaintiff made complaints to Norina D., Sean G., and the Anti-Harassment Office. Am. Compl. ¶¶ 17–19. But there are no facts to suggest that the OIG or anyone else reported Plaintiff's complaints to the person responsible for the termination notice or that this person became aware of Plaintiff's complaints by other means. If the decisionmaker was unaware of Plaintiff's protected activity, then it is not plausible that the decision to issue the termination notice was made "because [Plaintiff] engaged in a protected activity." *Kennedy v. McHugh*, Civ. No. CCB-13-390, 2013 WL 4541404, at *2 (D. Md. Aug. 23, 2013), *aff'd sub nom. Kennedy v. Dep't of the Army*, 554 F. App'x 248 (4th Cir. 2014) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998)). Without facts to suggest that NSA issued the notice of proposed termination "because [Plaintiff] engaged in a protected activity[,]" Plaintiff cannot base a plausible Title VII retaliation claim upon issuance of that notice, and any such claim must be dismissed. *Id.* (dismissing retaliation claim for plaintiff's failure to show that the Army took adverse action because plaintiff filed EEO complaint).

23

For the foregoing reasons, Plaintiff's retaliation claims in Count III of the Amended Complaint must be dismissed.

## V.    CONCLUSION

Because the Amended Complaint fails to state any plausible claim for relief under Title VII, Defendants' motion to dismiss is granted, and the Amended Complaint is dismissed without prejudice. A separate Order will issue.

 3/30/26
Date

Matthew J. Maddox
United States District Judge

24